**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PRAJNA DYUTI DAS, et al.

*Plaintiffs,*

v.

UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,

*Defendants.*

**Case No. 1:25-CV-3808-RCL**

# MEMORANDUM OPINION

This is an odd case. Plaintiffs have challenged an inadmissibility determination that Defendant U.S. Immigration and Customs Enforcement ("ICE") claims it never made at all. Plaintiffs allege that ICE's alleged inadmissibility determination was *ultra vires* and inconsistent with the Administrative Procedure Act ("APA"). ICE has moved to dismiss Plaintiffs' Complaint pursuant to rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons herein, the Court determines that Plaintiffs have standing and that consular nonreviewability does not bar their claim. ICE's motion will accordingly be denied.

## I. Background

Plaintiffs Prajina Dyuti Das and Prabhupada Pattnaik are foreign nationals whose child, Plaintiff P.P. is a U.S. Citizen. Compl. ¶¶ 19–21. Plaintiff Pattnaik, who is Plaintiff Das's husband, currently resides in North Carolina, while the other two plaintiffs currently reside in India. *Id.*

Plaintiff Das has been issued numerous H-4 visas over the years and traveled freely between India and the United States from 2013 to 2025. *Id.* ¶¶ 26–63. During that period, Plaintiff

Das had been granted employment authorization for February 2018 to April 2020, *id.* ¶ 42, which she extended to December 2022, *id.* ¶ 48, and, later, March 2025, *id.* ¶ 55.

But things went wrong for Plaintiff Das when she traveled to India in February 2025. At the time, her H-4 visa had been extended through March 2028. *Id.* ¶ 62. While in India, Plaintiff Das was summoned to the U.S. Consulate in Chennai for an in-person interview. *Id.* ¶ 65. During that interview, a consular official refused Plaintiff Das's application for a new H-4 visa pursuant to 8 U.S.C. § 1182(a)(6)(C)(i). *Id.* ¶ 66.

That provision of the Immigration and Nationality Act ("INA") provides that "aliens who are inadmissible" for certain enumerated reasons "are ineligible to receive visas and ineligible to be admitted to the United States." 8 U.S.C. § 1182(a). One of those reasons is fraud. The statute declares inadmissible aliens who "by fraud or willfully misrepresenting a material fact, seek[] to procure (or ha[ve] sought to procure or has procured) a visa, other documentation, or admission into the United States . . . ." 8 U.S.C. § 1182(a)(6)(C)(i).

When Plaintiff Das's counsel requested more information from the consulate, an official replied that the inadmissibility determination had been made by ICE. Compl. ¶ 69; *see also id.* Ex. E. That assertion is perplexing because ICE is not apparently empowered to make those kind of determinations. *See Manjunath v. Mayorkas*, No. 22-cv-488, 2023 WL 2913641, at *1 n.1 (D.D.C. Apr. 10, 2023) ("[A]s a general matter, ICE does not make inadmissibility determinations as it relates to the adjudication of non-immigrant and immigrant visas . . . . The Court is not aware of, and Plaintiff does not cite to, any statutory authority that gives ICE the ability to make inadmissibility determinations.").

Since the denial of her H-4 visa application, Plaintiff Das has remained in India with her child, Plaintiff P.P, who is a U.S. citizen. Compl. ¶¶ 78–79, ¶ 21. Plaintiffs allege that Plaintiff Das's inability to return to the U.S. has caused hardship to their family because Plaintiff P.P. suffers from Autism Spectrum Disorder and "suffers from the absence of his father" and from separation from the facility in North Carolina that was treating him. *Id.* ¶ 80–84.

Plaintiffs allege that ICE deprived Plaintiff Das of an opportunity to be heard regarding the allegations of fraud and misrepresentation that rendered her inadmissible. *Id.* ¶ 90. And she denies having committed any acts of fraud or misrepresentation. *Id.* ¶ 76–77.

In October 2025, Plaintiffs filed suit, alleging that Defendants' inadmissibility determination ("Count I"), *id.* ¶¶ 99–133, Defendants' failure to give Plaintiff Das notice and an opportunity to respond ("Count II"), *id.* ¶¶ 134–56; and Defendants' determination of inadmissibility despite prior determinations of admissibility ("Count III"), *id.* ¶¶ 157–67, were arbitrary and capricious and in violation of the INA.

Defendants moved to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), *see* ICE Mot. at 11–14, and for failure to state a claim pursuant to Rule 12(b)(6), *see id.* at 14–21. Specifically, ICE argues that Plaintiffs lack standing and that the consular nonreviewability doctrine compels dismissal. ICE Mot. at 11–13, 14.

Defendants motion is now fully briefed and ripe for review.[1]

[1] ICE did not file a Reply as permitted by LCvR 7(d).

## II. Legal Standard

### A. 12(b)(1)

"A motion for dismissal under Rule 12(b)(1) 'presents a threshold challenge to the court's jurisdiction.'" *Dvorak v. U.S. Dep't of Homeland Sec.*, No. 18-cv-1941, 2019 WL 1491743, at *1 (D.D.C. Apr. 3, 2019) (quoting *Hasse v. Sessions*, 835 F.2d 901, 906 (D.C. Cir. 1987)).

Federal jurisdiction is limited by Article III of the Constitution. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 145 S. Ct. 41, 47 (2025). "Federal courts are empowered—and indeed, have an obligation—to undertake an independent investigation to assure itself of its own subject-matter jurisdiction." *Schindler Elevator Corp. v. Wash. Metro. Area Transit Authority*, 514 F. Supp. 3d 197, 202 (D.D.C. 2020); *see also In re Sealed Case*, 131 F.3d 208, 210 (D.C. Cir. 1997) ("All federal courts[] 'are under an independent obligation to examine [their] own jurisdiction....'" (quoting *FW/PBS, Inc. v. City of Dall.*, 493 U.S. 215, 231 (1990))). The Supreme Court has confirmed that "the court cannot proceed unless it makes an independent determination that it has jurisdiction." *Riley v. Bondi*, 145 S. Ct. 2190, 2201 (2025).

"When ruling on a Rule 12(b)(1) motion, the court must 'treat the complaint's factual allegations as true' and afford the plaintiff 'the benefit of all inferences that can be derived from the facts alleged." *Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016) (quoting *Delta Air Lines, Inc. v. Export-Import Bank of U.S.*, 85 F. Supp. 3d 250, 259 (D.D.C. 2015). "Those factual allegations, however, receive 'closer scrutiny' than they would if the court were considering a Rule 12(b)(6) motion for failure to state a claim." *Dvorak*, 2019 WL 1491743, at *3 (quoting *Han*, 223 F. Supp. 3d at 103).

**B. 12(b)(6)**

To survive a 12(b)(6) motion, a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court evaluating a Rule 12(b)(6) "motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor." *Alemu v. Dep't of For-Hire Vehicles*, 327 F. Supp. 3d 29, 40 (D.D.C. 2018). However, "[a] court need not accept a plaintiff's legal conclusions as true, nor must a court presume the veracity of legal conclusions that are couched as factual allegations." *Id.* (citation omitted).

**III. Analysis**

**A. Article III Standing**

Defendants argue that the Court lacks subject-matter jurisdiction over Plaintiffs' claims because Plaintiffs lack standing.

"Article III of the Constitution confines the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Food & Drug Admin. v. All. for Hippocratic Med.*, 144 S. Ct. 1540, 1554 (2024). "For there to be a case or controversy under Article III, the plaintiff must have a "personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting Rained v. Byrd, 521 U.S. 811, 819 (1997)).

"To establish standing . . . a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *All. for*

*Hippocratic Med.*, 144 S. Ct. at 1555. For a case with multiple plaintiffs, "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017).

At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Sierra Club v. Env't Prot. Agency*, 292 F.3d 895, 899–900 (D.C. Cir. 2002) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Defendants argue that Plaintiffs' have failed to demonstrate each element of standing. *See* ICE Mot. at 11. The Court addresses each in turn.

1. Injury in Fact

ICE argues that Plaintiffs were not injured because, as a factual matter, ICE did not make an inadmissibility determination regarding Plaintiff Das. *See id.* ICE states unequivocally that it "did not make a finding of inadmissibility." *Id.* Therefore, on ICE's view, Plaintiffs were not injured, *id.* at 12, and ICE did not cause any injury, *id.* at 13.

But the existence or non-existence of an ICE determination speaks to causation and redressability rather than injury in fact. Put another way, Plaintiffs have alleged concrete injuries. First, Plaintiffs allege that Plaintiff Das has been defamed by ICE's inadmissibility determination and their dissemination of that determination to the Department of State. Compl. ¶ 4, ¶ 6. That injury is concrete under Supreme Court precedent because there is "a close historical or common-law analogue for their asserted injury." *TransUnion*, 141 S. Ct. at 2204; *see also League of Women Voters v. U.S. Dep't of Homeland Sec.*, 835 F. Supp. 3d 79, 111 (D.D.C. 2026) ("[W]hen a plaintiff is 'injured by [the] dissemination of allegedly inaccurate information' to a third party—that injury 'bears a close relationship to the common-law tort of defamation' and constitutes an Article III

injury." (quoting *Ranjan v. U.S. Dep't of Homeland Sec.*, 747 F. Supp. 3d 192, 199–200 (D.D.C. 2024))); *Ranjan*, 747 F. Supp. 3d at 199–200 (applying the *TransUnion* framework to alleged defamation by a Department of Homeland Security inadmissibility determination).

Second, Plaintiffs allege hardship to Plaintiff P.P. from being separated from his father and medical care, Compl. ¶¶ 80–84. That falls into the category of concrete harm regularly advanced by plaintiffs in immigration cases. *See Ranjan*, 747 F. Supp. 3d at 199 (noting that "[i]mmigration plaintiffs often ground their claims in traditional harms that are obviously concrete: lost professional opportunities, forced separation from family members, and difficulty accessing medical care" and collecting cases).

Therefore, the real thrust of ICE's argument is that those injuries could not have resulted from their conduct because no inadmissibility determination existed. Therefore, the Court addresses ICE's arguments in its analysis of causation and redressability.

2. Causation

"To establish causation, a plaintiff must show that it is plausible that defendants proximately caused plaintiff's injury in fact." *Sweigert v. Perez*, 334 F. Supp. 3d 36, 44 (D.D.C. 2018) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545–46 (2007)). At the pleading stage, a plaintiff "must simply allege facts that plausibly support the proffered causal connection." *Pierce v. Yale Univ.*, No. 17-cv-02508, 2019 WL 162029, at *4 (D.D.C. Jan. 10, 2019) (citing *In re Sci. Applications Int'l Corp. Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 23 (D.D.C. 2014)).

To demonstrate causation, Plaintiffs rely on the allegations in their Complaint and an email from the State Department to Plaintiffs' counsel. *See* Pls.' Opp. at 3; Compl. Ex. E at 2 ("State Department Email"), ECF No. 1-6. The State Department Email claims that Plaintiff's "refusal

under INA 212(a)(6)(C)(i) is based on a finding originally made by the U.S. Immigrations and Customs Enforcement." State Department Email at 2. ICE replies that the email is merely "[a]n incorrect statement from the Department of State . . . ." ICE Mot. at 21.[1]

Notably, ICE's denial that it made any inadmissibility determination closely tracks the facts of another case in this district. In *Manjunath v. Mayorkas*, the plaintiffs alleged that the U.S. Consulate General in Vancouver had told them that ICE had made their inadmissibility determination. No. 1:22-cv-488, 2023 WL 2913641, at *3 (D.D.C. Apr. 10, 2023). Like this case, ICE denied that it had made such a determination. *Id.* at *1 n.1. Ultimately, the court did not get to the bottom of that discrepancy because it dismissed the case on other grounds. *See id.* The fact that another government agency has claimed that ICE made inadmissibility determinations, despite their lack of apparent statutory authority to do so, *see id.*, at least calls into question whether the State Department's statement in this case was a mere error.

The Court is therefore presented with "a dispute over the factual basis of the court's subject matter jurisdiction," meaning that it "may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant." *Feldman v. Fed. Deposit Insurance Corp.*, 879 F.3d 347, 351 (D.C. Cir. 2018) (quoting *Phoenix Consulting v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)).

But at "this threshold stage, prior to any discovery" the Court must afford Plaintiffs "the benefit of all reasonable inferences." *Id.* (citing *Herbert v. Nat'l Acad. Of Scis.*, 974 F.2d 192, 198 n.6 (D.C. Cir. 2017)). Crucially, "weighing the plausibility of her allegations [is] for a later stage of the proceedings, as [is] assessing the credibility of her allegations." *Id.* (first citing *Ashcroft v.*

---

[1] ICE uses this factual dispute to argue that Plaintiffs' have failed to name the appropriate defendants. ICE Mot. at 21. The Court rejects that argument for the same reasons addressed in this section.

*Iqbal*, 556 U.S. 662, 671 (2009), then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (2009)).

And Plaintiffs have produced more than allegations. They have produced documents from the State Department indicating that ICE made her inadmissibility determination. *See* State Department Email. The Court concludes that, at this early stage, Plaintiffs have offered enough to "plausibly support the proffered causal connection." *Pierce*, 2019 WL 162029, at *4.

3. Redressability

For an injury to be redressable, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon v. Eastern Ky. Welfare Rts. Org.*, 426 U.S. 26, 38, 43 (1976)). "Typically, redressability is absent only when the Court's decision would have 'no real effect' on the plaintiff's injury." *Cherokee Nation v. U.S. Dep't of the Interior*, 643 F. Supp. 3d 90, 106 (D.D.C. 2022) (citing *Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*, 909 F.3d 446, 465 (D.C. Cir. 2018)).

"'To determine whether an injury is redressable,' we 'consider the relationship between "the judicial relief requested" and the "injury" suffered.'" *Murthy v. Missouri*, 144 S. Ct. 1972, 1995 (2024) (quoting *California v. Texas*, 141 S. Ct. 2104, 2115 (2021)). Here, Plaintiffs have alleged two injuries. First, reputational harm to Plaintiff Das. Compl. ¶ 4, ¶ 6. Second, injury to Plaintiff P.P. resulting from the absence of his father and inability to pursue his ordinary course of therapy. *Id.* ¶¶ 80–84.

i. Defamation

Plaintiff Das alleges that ICE's inadmissibility determination and their dissemination of that finding to the Department of State is defamatory. The question is therefore whether any decision by the Court would be likely to redress Plaintiff Das's injury. *See Lujan*, 504 U.S. at 561. Plaintiffs ask the Court to set aside ICE's inadmissibility determination. Compl. at 25 (Prayer for Relief). Setting aside a defamatory inadmissibility determination would seem to redress Plaintiff Das's injury by removing the imprimatur of procedural regularity which it currently enjoys. The Court is satisfied that Plaintiffs have sufficiently alleged redressability at this stage.

ii. Injury to P.P. and Plaintiff Pattnaik

Plaintiff P.P.'s injury results from his inability to return to the United States with his mother, who is his primary caretaker. *Id.* ¶ 79. Plaintiff Pattnaik's injuries similarly result from separation from Plaintiff Das. *Id.* ¶ 83–87. Those harms could only be redressed if Plaintiff Das's visa application were approved. ICE argues that because it cannot grant or deny H-4 visas, any relief against ICE would not redress Plaintiffs' injuries. ICE Mot. at 13–14.

Plaintiffs have the better of this argument. As addressed above, ICE is correct that it does not apparently have statutory authority to make inadmissibility determinations. *See Manjunath,* 2023 WL 2913641, at *1 n.1. But Plaintiffs have alleged that ICE did make such a determination in this case and has provided evidence consistent with that allegation. *See* Compl. Ex. E. Plaintiffs have also alleged that the State Department made their decision on Plaintiff Das's H-4 visa based on ICE's determination. *See id.* It stands to reason that if ICE's determination were set aside, there is a non-speculative chance that the State Department would make a different determination. True, Plaintiffs would have to produce more in, say, a motion for summary judgment. *See Or.*

*Env't Council v. Internal Revenue Serv.*, 836 F. Supp. 3d 1, 25 (D.D.C. 2026) (noting that "at the summary judgment stage, plaintiffs 'can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts"' sufficient to establish their standing" (quoting *Lujan*, 504 U.S. at 562)). But Plaintiffs have carried their burden at this stage.

Though this theory of standing is problematic under the consular nonreviewability doctrine as addressed below, the Court's analysis at this point merely concludes that the theory's flaws are not jurisdictional in nature. *See Baan Rao Thai Restaurant v. Pompeo*, 985 F. 3d 1020, 1028–29 (D.C. Cir. 2021) ("[C]onsular nonreviewability is a doctrine 'judicial in origin.' It is 'informed by our respect for the separation of powers' but it is not a limit on our subject matter jurisdiction as it 'goes to our *willingness*, not our *power*, to hear these cases.'" (quoting *Allen v. Milas*, 896 F.3d 1094, 1101 (9th Cir. 2018)).

The Court therefore concludes that Plaintiffs have sufficiently plead Article III standing. Assured of its jurisdiction, the Court now addresses ICE's argument that the case should be dismissed pursuant to Rule 12(b)(6).

**B. Consular Nonreviewability**

ICE next argues that Plaintiffs' Complaint fails to state a claim because it "runs headfirst into the consular nonreviewability doctrine . . . ." ICE Mot. at 14. This doctrine implicates separation-of-power principles and precludes courts from exercising "judicial review of a consular officer's denial of a visa . . . ." *Dep't of State v. Muñoz*, 144 S. Ct. 1812, 1820 (2024). Because the Court cannot review the consular official's decision to refuse Plaintiff Das's application, ICE reasons, the case must be dismissed. ICE Mot. at 17.

But Plaintiffs argue that they are not asking the Court to review any consular decision. Pls.' Opp. at 9–10. Instead, they argue that they are asking the Court to review ICE's inadmissibility determination. Compl. at 25. And "consular nonreviewability does not preclude a plaintiff's APA claim when it challenges an action taken by DHS—not a consular officer." *Challa v. U.S. Dep't of Homeland Sec.*, No. 24-3065, 2026 WL 1983290, at *7 (D.D.C. July 9, 2026) (citing *Ranjan*, 747 F. Supp. 3d at 202). Specifically, Plaintiffs claim that ICE's inadmissibility determination, assuming it exists, violated the APA because ICE did not give her notice as required by 8 U.S.C. § 1182(b). *Id.* ¶¶ 137–38.

ICE argues that the distinction is immaterial because consular nonreviewability also applies "where a plaintiff attempts to circumvent the doctrine by claiming [that] he is not seeking a review of the consular officer's decision, but is challenging some other, related aspect of the decision." *Malyutin v. Rice*, 677 F. Supp. 2d 43, 46 (D.D.C. 2009), *aff'd*, No. 10-5015, 2010 WL 2710451 (D.C. Cir. July 6, 2010). Accordingly, a line of district court decisions in this circuit specifically apply the consular nonreviewability doctrine to challenges to "the inadmissibility determination that is the basis for the unfavorable visa decision." *Manjunath*, 2023 WL 2913641, at *4; *see also Thatikonda v. U.S. Dep't of Homeland Sec.*, No. 1:21-cv-1564, 2022 WL 425013, at *6 (D.D.C. Feb. 11, 2022).

ICE has a point, but Plaintiffs ultimately have the better of these arguments. One way of assessing the connection between Plaintiffs' claims and the consular decision is to ask whether Plaintiffs would have standing regardless of the consular official's decision.

Consider the theory of standing advanced for Plaintiff P.P. and Plaintiff Pattnaik. Those injuries ultimately derive from Plaintiff Das's visa denial. *See supra* section III.A.3.ii. In other words, "[w]ithout the consular officer's decisions, [ICE's alleged] 'inadmissibility finding' was of

no moment." *Thatikonda*, 2022 WL 425013, at *6. That is the kind of claim that must be dismissed pursuant to the consular nonreviewability doctrine.

But Plaintiff Das's reputational injury is more complex. Unlike Plaintiff P.P.'s theory of standing, ICE's alleged defamation "exists regardless of any past or future visa denial." *Ranjan*, 747 F. Supp. 3d at 201. Plaintiff Das's injuries are therefore distinct from those addressed in *Thatikonda*, where the plaintiff "alleged traditional concrete injuries like the risk of losing her job 'but ma[de] no effort to tie [her] alleged procedural injury to any other past or future concrete injury.'" *Id.* at 201 (quoting *Thatikonda*, 2022 WL 425013, at *5 n.6).

ICE's citation to out-of-circuit precedent is therefore unavailing. *See* ICE Mot. at 18. In *Matsushkina v. Nielsen*, the plaintiff challenged an inadmissibility determination which was "the basis for the unfavorable visa decision (which in turn provides standing)." 877 F.3d 289, 295 (7th Cir. 2017). But Plaintiff Das has alleged an injury that provides standing regardless of the consular officer's decision on her visa. *Cf. Thatikonda*, 2022 WL 425013, at *6. ("[I]t is the consular officer's unfavorable decisions that provide standing because they injured [Plaintiffs'] concrete interests.").

Judge Bates's reasoning in *Challa v. DHS* is instructive. 2026 WL 1983290. In *Challa*, the plaintiff challenged DHS's failure to explain its visa denial decision under the APA. *Id.* at 7. DHS argued that consular nonreviewability precluded review. *Id.* But Judge Bates reasoned that because the plaintiffs claim would "leave undisturbed the consular officer's discretionary visa denial decision," the claim could proceed. *Id.* Similarly, setting aside ICE's alleged inadmissibility determination would not invalidate the consular officer's visa decision.

True, Judge Bates noted that "Challa's procedural challenge cannot open the door to a subsequent substantive challenge to her inadmissibility determination if DHS were to offer her an explanation of its TRIP denial . . . ," *id.*, and Plaintiffs here are ultimately seeking to set aside an inadmissibility determination, Compl. at 25. But *Challa* involved a jurisdiction-stripping provision of the INA which does not apply here. 2026 WL 1983290, at *5, *7 ("[T]his Court lacks jurisdiction to review any type of claim challenging, directly or indirectly, the expedited removal order or the determinations underlying that order. So while the APA entitles Challa to an explanation, the Act bars her from challenging the validity of that explanation.").

And there is an additional layer to this case. ICE admits that it does not have statutory authority to "make inadmissibility determinations as [they] relate[] to the adjudication of nonimmigrant and immigrant visas." ICE Mot. at 21; *see also Manjunath*, 2023 WL 2913641, at *1 n.1. Nonetheless, Plaintiffs have provided reason to believe that ICE did so. *See* State Department Email. If such a determination occurred, it would plausibly be contrary to law and therefore in violation of the APA. In that case, consular nonreviewability would likely not apply because the challenge would be directed not against consular discretion but against ICE's authority. *See Challa*, 2026 WL 1983290, at *7 (citing *Mulligan v. Schultz*, 848 F.2d 655, 657 (5th Cir. 1988)).

The Court recognizes the realities of this case. It is likely, as ICE alleges, that Plaintiffs' ultimately seek a visa for Plaintiff Das. *See* Pl.'s Opp. at 7 (discussing the denial of an H-4 visa on the basis of the inadmissibility finding). But even if the Court were to set aside ICE's alleged decision, the Court sees no means by which consular discretion would be restrained.

Therefore, the concerns embodied by the consular nonreviewability doctrine do not seem to be implicated by Plaintiffs' claim. Consular nonreviewability is a doctrine of judicial restraint

based upon separation-of-powers concerns. *See Baan Rao Thai*, 985 F.3d at 1024 ("Decisions regarding the admission and exclusion of noncitizens 'may implicate "relations with foreign powers," or involve "classifications . . . defined in the light of changing political and economic circumstances"' and, accordingly, 'such judgments "are frequently of a character more appropriate to either the Legislature or the Executive."'" (quoting *Trump v. Hawaii*, 138 S. Ct. 2392, 2418–19 (2018)). But Plaintiffs have not asked the Court to pass judgment on the decisions of officials in the Executive branch because Plaintiffs are not claiming that the consular officer's decision was in some way defective. *Cf. Maui Hope v. Embassy of the U.S., Dushanbe*, No. 25-654, 2025 WL 3687556, at *4 (D.D.C. Dec. 19, 2025) ("The Court sees no basis to distinguish between (1) a claim that a consular officer reached a decision using inadequate evidence, and (2) a claim that the officer reached the wrong decision. Both are barred by the doctrine of consular nonreviewability.").

And the Court sees no reason to scrutinize Plaintiffs' motives when its duty is simply to allow litigants to pursue remedies available to them under law. *See Alder v. Fenton*, 65 U.S. 407, 410 (1860) ("It is the province of eithics to consider of actions in their relation to motives, but jurisprudence deals with actions in their relation to law, and for the most part independently of the motive."). The Court recognizes that Plaintiffs claims may "well be nonreviewable for another reason," but "the [C]ourt cannot even begin to determine whether nonreviewability attaches because it does not know" how the inadmissibility determination in this case was made. *Ranjan*, 747 F. Supp. 3d at 202 (citations omitted).

Because, at this stage, ICE has not carried its burden to demonstrate that Plaintiffs lack a legally-cognizable claim, *see Cohen v. Bd. of Trustees of Univ. of the Dist. of Columbia*, 819 F.3d 476, 481 (D.C. Cir. 2016), consular nonreviewability does not require dismissal pursuant to Rule 12(b)(6).

## IV. Conclusion

For the foregoing reasons, the Court will deny ICE's Motion to Dismiss. ICE shall file their answer within 14 days of the order denying their Motion to Dismiss.

An order accompanying this Memorandum Opinion shall issue.

Date: 30 September, 2026

Royce C. Lamberth
Hon. Royce C. Lamberth
United States District Judge